UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

MELESIO LEON, LUIS A. ASITIMBAY,
and NESTOR L. MACANCELA, individually          :
and on behalf of all others similarly situated,

                                                :          **COLLECTIVE AND**
                      Plaintiffs,                          **CLASS ACTION**
                                                :          **COMPLAINT**

              -vs-
                                                :          Plaintiffs Demand a Jury

BESIM KUKAJ d/b/a BKUK GROUP, BKUK 10
CORP. d/b/a Cara Mia 2, ZUCCA TRATTORIA        :
INC. d/b/a Taqueria Mez-A and Gallo Nero, PIO
RESTAURANT LLC d/b/a Luna Piena, and           :
BKUK 7 CORP. d/b/a El Gallo de Oro,

                                                :
                      Defendants.
---------------------------------------------------------------X


        Plaintiffs MELESIO LEON, LUIS A. ASITIMBAY, and NESTOR L. MACANCELA,

by their undersigned attorneys, on behalf of themselves and all others similarly situated, as and

for their complaint against the defendants, allege as follows:

        1.      This is an action for damages for violations of the Fair Labor Standards Act

(FLSA), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law, N.Y. Lab. L. §§ 190, *et seq.*

The federal law claims are brought as a collective action pursuant to 29 U.S.C. § 216(b).  The

state law claims are brought as a class action, pursuant to Rule 23(b)(3) of the Federal Rules of

Civil Procedure, on behalf of the named plaintiffs and all other non-exempt employees who

worked for defendant Besim Kukaj d/b/a BKUK Group at more than a dozen restaurants he owns

and controls through various corporate entities, including through defendants BKUK 10 Corp.,

Zucca Trattoria Inc., Pio Restaurant LLC, and BKUK 7 Corp.

**Jurisdiction and Venue**

2.     This Court has subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 216(b) (FLSA).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, because the state law claims form part of the same case or controversy as the federal law claims.

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because the events and omissions giving rise to plaintiffs' claims occurred in this District.

**The Parties**

4.     Plaintiff MELESIO LEON ("Mr. Leon") was employed by Mr. Kukaj to work as a waiter at Cara Mia 2 and Taqueria Mez-A, two restaurants owned, operated, and controlled by Mr. Kukaj.

5.     Plaintiff LUIS A. ASITIMBAY ("Mr. Asitimbay") was employed by Mr. Kukaj to work as a waiter at Cara Mia 2, Luna Piena, and El Gallo de Oro (formerly known as Gallo Nero 2), all restaurants owned, operated, and controlled by Mr. Kukaj.

6.     Plaintiff NESTOR L. MACANCELA ("Mr. Macancela") was employed by Mr. Kukaj to work as a waiter at Cara Mia 2, a restaurant owned, operated, and controlled by Mr. Kukaj.

7.     Defendant BESIM KUKAJ ("Mr. Kukaj") owns, operates, and manages more than a dozen restaurants in Manhattan under the name BKUK Group, including Cara Mia, Cara Mia 2, Taqueria Mez-A, Luna Piena, El Gallo de Oro (formerly known as Gallo Nero 2), Limon Jungle, La Carbonara, Intermezzo, Maria Pia, Gallo Nero, Serenata, and Lime Jungle Empanadas.  Mr. Kukaj was plaintiffs' employer and made all compensation and personnel decisions affecting plaintiffs and all other employees at his restaurants.

8.     Defendant BKUK 10 CORP. ("BKUK 10") is a corporation organized under the laws of the State of New York with a principal place of business at 623 Ninth Avenue, New York, NY 10036.  BKUK 10 does business under the trade name Cara Mia 2.  Upon information and belief, Mr. Kukaj owns and controls BKUK 10 Corp.

9.     Defendant ZUCCA TRATTORIA INC. ("Zucca Trattoria") is a corporation organized under the laws of the State of New York with a principal place of business at 95 Seventh Avenue South, New York, NY 10014.  Zucca Trattoria does business under the trade name Taqueria Mez-A and has previously done business under the trade name Gallo Nero.  Upon information and belief, Mr. Kukaj owns and controls Zucca Trattoria.

10.     Defendant PIO RESTAURANT LLC ("Pio Restaurant") is a corporation organized under the laws of the State of New York with a principal place of business at 243 East 53rd Street, New York, NY 10022.  Pio Restaurant does business under the trade name Luna Piena.  Upon information and belief, Mr. Kukaj owns and controls Pio Restaurant.

11.     Defendant BKUK 7 CORP. ("BKUK 7") is a corporation organized under the laws of the State of New York with a principal place of business at 1 Seventh Avenue South, New York, NY 10014.  BKUK 7 does business under the trade name El Gallo de Oro.  Upon information and belief, Mr. Kukaj owns and controls BKUK 7 Corp.

## Facts Relevant to All Claims

12.     Defendant Besim Kukaj is a restauranteur with a history of underpaying workers at more than a dozen restaurants he owns, controls, and manages in Manhattan.  He has coerced large numbers of low-wage workers – including many who speak little or no English – to continue working for him for less than legal wages by immediately firing anyone who insists on being paid what the law requires.

13.    Mr. Kukaj runs his restaurant empire through the BKUK Group, an unincorporated entity, without regard to corporate formalities or wage and hours laws.  He does not give workers any notice or statements of wage rates, wages paid, withholdings deducted, or hours worked as required by federal and state laws.  He transfers workers from restaurant to restaurant based on his own needs.   He changes the names of restaurants and the corporate entities associated with them at his whim.  There is, in fact, no distinction between Mr. Kukaj, the corporations he has formed, and the restaurants he owns, operates, and controls.  Every action affecting workers at Mr. Kukaj's restaurants is directed by Mr. Kukaj personally for his own benefit.

14.    Mr. Kukaj and the companies he owns and controls failed to pay plaintiffs and other employees for all the hours they worked.

15.    Upon information and belief, Mr. Kukaj or persons acting at his direction caused the time clock records to be adjusted so that they never showed more than 27 hours worked by any employee in any work week, even though plaintiffs and other employees regularly worked for more than 27 hours per week in his restaurants.

16.    Mr. Kukaj and the companies he owns and controls failed to pay plaintiffs and other employees the minimum wages required by federal and state laws.

17.    Mr. Kukaj and the companies he owns and controls failed to pay plaintiffs and other employees one and one-half times the minimum wage rate for all hours worked in excess of 40 per week.

18.    Mr. Kukaj and the companies he owns and controls did not give plaintiffs and other employees notice of the amount of cash wage the employer is paying a tipped employee, the amount claimed by the employer as a tip credit, that the tip credit claimed by the employer

cannot exceed the amount of tips actually received by the tipped employee, that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips, or that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions

19.     Mr. Kukaj did not give plaintiffs and other employees written notice of their regular hourly pay rate, overtime hourly pay rate, amount of any tip credit to be deducted from the basic minimum hourly pay rate, the regular pay day, or that extra pay is required if tips are insufficient to bring the employee up to the basic hourly pay rate.

20.     Mr. Kukaj and his companies were not permitted to take a "tip credit" or pay plaintiffs and other employees the lower federal minimum wage for "tipped" employees because they failed to provide employees with notices required by the Fair Labor Standards Act.

21.     Mr. Kukaj and his companies were not permitted to take a "tip credit" or pay plaintiffs and other employees the lower New York State minimum wage for "tipped" employees because they failed to provide employees with written notices required by the New York Labor Law.

### A.  Defendants' Failure to Pay Plaintiff Luis A. Asitimbay the Required Wages

22.     In April 2016, Mr. Kukaj hired plaintiff Luis A. Asitimbay.

23.     Mr. Kukaj assigned Mr. Asitimbay to work as a waiter at the Gallo Nero 2 restaurant.

24.     Mr. Asitimbay worked as a waiter for Mr. Kukaj at Gallo Nero 2.

25.     In May 2016, Mr. Kukaj assigned Mr. Asitimbay to work at Luna Piena, another restaurant Mr. Kukaj owned and controlled.

26.     Mr. Asitimbay worked as a waiter for Mr. Kukaj at Luna Piena.

*27.*     Mr. Asitimbay was not paid any wages for his work at Gallo Nero 2 or Luna Piena.  His compensation was limited to tips from customers.

28.     In April 2017, Mr. Kukaj assigned Mr. Asitimbay to work as a waiter at Cara Mia 2, another restaurant owned and controlled by Mr. Kukaj.

29.     The federal minimum wage for hospitality workers in New York City from April 2017 through August 2017 was $7.25 per hour.

30.     The New York State minimum wage for hospitality workers in New York City from April 2017 through August 2017 was $11.00 per hour.

31.     Mr. Kukaj and his companies consistently paid Mr. Asitimbay less than the federal minimum wage of $7.25 per hour and the State minimum wage of 11.00 per hour.

   a.   During the week ending May 28, 2017, Mr. Asitimbay worked more than 15 hours at Cara Mia 2.  Mr. Kukaj paid him $100 in wages for that week.  Mr. Asitimbay's effective wage rate was less than $6.67 per hour for that week.

   b.   During the week ending June 4, 2017, Mr. Asitimbay worked more than 48 hours at Cara Mia 2.  Mr. Kukaj paid him $200 in wages for that week.  Mr. Asitimbay's effective wage rate was less than $4.17 per hour that week.

   c.   During the week ending June 11, 2017, Mr. Asitimbay worked more than 25.5 hours at Cara Mia 2.  Mr. Kukaj paid him $200 in wages for that week.  Mr. Asitimbay's effective wage rate was less than $7.84 per hour that week.

   d.   During the week ending June 18, 2017, Mr. Asitimbay worked more than 42.25 hours at Cara Mia 2.  Mr. Kukaj paid him $200 in wages for that week.  Mr. Asitimbay's effective wage rate was less than $4.73 per hour that week.

e.   During the week ending July 2, 2017, Mr. Asitimbay worked more than 40 hours at Cara Mia 2.  Mr. Kukaj paid him $200 in wages for that week.  Mr. Asitimbay's effective wage rate was less than $5.00 per hour that week.

f.   During the week ending July 9, 2017, Mr. Asitimbay worked more than 38.75 hours at Cara Mia 2.  Mr. Kukaj paid him $200 in wages for that week.  Mr. Asitimbay's effective wage rate was less than $5.16 per hour that week.

g.   During the week ending July 16, 2017, Mr. Asitimbay worked more than 38 hours at Cara Mia 2.  Mr. Kukaj paid him $200 in wages for that week.  Mr. Asitimbay's effective wage rate was less than $5.26 per hour that week.

32.    Mr. Asitimbay was not paid one and one-half times the minimum wage when he worked more than 40 hours in a workweek.

33.    Mr. Asitimbay often worked more than 10 hours in a single day, including on June 3, 2017.

34.    Mr. Asitimbay was not paid for a spread of hours on days when he worked more than 10 hours.

**B.   Defendants' Failure to Pay Plaintiff Melesio Leon the Required Wages**

35.    In May 2017, Mr. Kukaj hired plaintiff Melesio Leon.

36.    Mr. Kukaj assigned Mr. Leon to work as a waiter at the Cara Mia 2 restaurant.

37.    Mr. Leon worked as a waiter for Mr. Kukaj at Cara Mia 2.

38.    Mr. Kukaj and his companies consistently paid Mr. Leon less than the federal minimum wage of $7.25 per hour and the State minimum wage of $11.00 per hour.

a.  During the week ending May 28, 2017, Mr. Leon worked more than 43.5 hours at Cara Mia 2.  Mr. Kukaj paid him $100 in wages for that week.  Mr. Leon's effective wage rate was less than $2.30 per hour that week.

h.  During the week ending June 4, 2017, Mr. Leon worked more than 56 hours at Cara Mia 2.  Mr. Kukaj paid him $200 in wages for that week.  Mr. Leon's effective wage rate was less than $3.57 per hour that week.

i.  During the week ending June 11, 2017, Mr. Leon worked more than 40 hours at Cara Mia 2.  Mr. Kukaj paid him $200 in wages for that week.  Mr. Leon's effective wage rate was less than $5.00 per hour that week.

j.  During the week ending June 18, 2017, Mr. Leon worked more than 48.75 hours at Cara Mia 2.  Mr. Kukaj paid him $200 in wages for that week.  Mr. Leon's effective wage rate was less than $4.10 per hour that week.

k.  During the week ending June 25, 2017, Mr. Leon worked more than 53 hours at Cara Mia 2.  Mr. Kukaj paid him $200 in wages for that week.  Mr. Leon's effective wage rate was less than $3.77 per hour that week.

l.  During the week ending July 2, 2017, Mr. Leon worked more than 49 hours at Cara Mia 2.  Mr. Leon was not paid any wages for his work that week.  His compensation was limited to tips from customers.

m.  During the week ending July 9, 2017, Mr. Leon worked more than 49 hours at Cara Mia 2.  Mr. Leon was not paid any wages for his work that week.  His compensation was limited to tips from customers.

n.   During the week ending July 16, 2017, Mr. Leon worked more than 49 hours at Cara Mia 2. Mr. Leon was not paid any wages for his work that week. His compensation was limited to tips from customers.

o.   During the week ending July 23, 2017, Mr. Leon worked more than 52 hours at Cara Mia 2. Mr. Leon was not paid any wages for his work that week. His compensation was limited to tips from customers.

p.   During the week ending July 30, 2017, Mr. Leon worked more than 39.5 hours at Cara Mia 2. Mr. Leon was not paid any wages for his work that week. His compensation was limited to tips from customers.

39.     Mr. Leon was not paid one and one-half times the minimum wage when he worked more than 40 hours in a workweek.

40.     Mr. Leon often worked more than 10 hours in a single day, including on May 26 and June 25, 2017.

41.     Mr. Leon was not paid for a spread of hours on days when he worked more than 10 hours.

42.     In August 2017, Mr. Kukaj assigned Mr. Leon to work as a waiter at Taqueria Mes-A, another restaurant owned, operated, and controlled by Mr. Kukaj.

43.     After working as a waiter for two days at Taqueria Mes-A, Mr. Leon received a text message from Mr. Kukaj informing him that he would be paid a flat rate of $100 per week.

44.     Mr. Leon informed Mr. Kukaj that he objected to being paid less than the legal wage.

45.     After receiving Mr. Leon's complaint, Mr. Kukaj terminated Mr. Leon's employment by refusing to assign any work hours to him.

46.     Mr. Leon was not paid any wages for his work at Taqueria Mes-A.

### C. **Defendants' Failure to Pay Plaintiff Nestor Macancela the Required Wages**

47.     In May 2017, Mr. Kukaj hired plaintiff Nestor Macancela.

48.     Mr. Kukaj assigned Mr. Macancela to work as a waiter at the Cara Mia 2 restaurant.

49.     Mr. Macancela worked as a waiter for Mr. Kukaj at Cara Mia 2.

50.     Mr. Kukaj and his companies consistently paid Mr. Macancela less than the federal minimum wage of $7.25 per hour and the State minimum wage of $11.00 per hour.

a.  During the week ending June 4, 2017, Mr. Macancela worked more than 40 hours at Cara Mia 2.  Mr. Macancela was not paid any wages for his work that week.  His compensation was limited to tips from customers.

b.  During the week ending June 11, 2017, Mr. Macancela worked more than 40 hours at Cara Mia 2.  Mr. Macancela was not paid any wages for his work that week.  His compensation was limited to tips from customers.

c.  During the week ending June 18, 2017, Mr. Macancela worked more than 40 hours at Cara Mia 2.  Mr. Macancela was not paid any wages for his work that week.  His compensation was limited to tips from customers.

d.  During the week ending June 25, 2017, Mr. Macancela worked more than 40 hours at Cara Mia 2.  Mr. Macancela was not paid any wages for his work that week.  His compensation was limited to tips from customers.

e.  During the week ending July 2, 2017, Mr. Macancela worked more than 40 hours at Cara Mia 2.  Mr. Macancela was not paid any wages for his work that week.  His compensation was limited to tips from customers.

f.   During the week ending July 9, 2017, Mr. Macancela worked more than 40 hours at Cara Mia 2. Mr. Macancela was not paid any wages for his work that week. His compensation was limited to tips from customers.

g.   During the week ending July 16, 2017, Mr. Macancela worked more than 40 hours at Cara Mia 2. Mr. Kukaj paid him $200 in wages for that week. Mr. Macancela's effective wage rate was less than $5.00 per hour that week.

h.   During the week ending July 23, 2017, Mr. Macancela worked more than 40 hours at Cara Mia 2. Mr. Kukaj paid him $200 in wages for that week. Mr. Macancela's effective wage rate was less than $5.00 per hour that week.

i.   During the week ending July 30, 2017, Mr. Macancela worked more than 40 hours at Cara Mia 2. Mr. Macancela was not paid any wages for his work that week. His compensation was limited to tips from customers.

51.   Mr. Macancela was not paid one and one-half times the minimum wage when he worked more than 40 hours in a workweek.

52.   Mr. Macancela often worked more than 10 hours in a single day, including every Thursday and Friday when he worked a double shift.

53.   Mr. Macancela was not paid for a spread of hours on days when he worked more than 10 hours.

D.  **Mr. Kukaj and the Other Defendants Intentionally Violated the Law**

54.   Mr. Kukaj and the other defendants acted intentionally to deprive plaintiffs and other employees of their rightful wages when Mr. Kukaj designed and implemented the above-described policies and practices.

55.     Mr. Kukaj and the companies he owns and controls were well aware of their legal obligations under the Fair Labor Standards Act and the New York Labor Law.

56.     On March 24, 2014, employees at a restaurant owned, controlled, and managed by Mr. Kukaj filed a lawsuit against him and one of his corporate entities for violations of the minimum wage, overtime, spread of hours, and notice requirements of the FLSA and New York Labor Law.

57.     On January 28, 2015, a bartender employed at two restaurants owned, controlled, and managed by Mr. Kukaj filed a lawsuit against him and two of his corporate entities for violations of the minimum wage, overtime, spread of hours, and notice requirements of the FLSA and New York Labor Law.

58.     On January 10, 2017, bus boys and food deliverymen at two restaurants owned, controlled, and managed by Mr. Kukaj filed a lawsuit against him and two of his corporate entities for violations of the minimum wage, overtime, and spread of hours requirements of the FLSA and New York Labor Law.

59.     These prior lawsuits gave Mr. Kukaj and the other defendants actual notice of their legal obligations under the FLSA and New York Labor law.

60.     Despite having actual notice of their legal obligations under the FLSA and New York Labor Law, Mr. Kukaj and the other defendants intentionally violated the law by failing to provide the required notices and failing to pay plaintiffs and other employees the minimum wages, overtime, and spread of hours compensation they were entitled to be paid under the FLSA and New York Labor Law.

E. **Collective and Class Allegations**

61.    Mr. Kukaj's conduct described above was part of and resulted from policies and practices that he applied to all employees who worked as non-exempt employees at more than a dozen restaurants he owns, controls, and manages in Manhattan.

62.    Plaintiffs therefore bring their federal claims as an opt-in collective action pursuant to 29 U.S.C. § 216(b) (the "FLSA Opt-In Class"), and their state law claims as an opt-out class action (the "NYS Law Opt-Out Class") pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

63.    The FLSA Opt-In Class is comprised of all non-exempt employees who, at any time since August 15, 2014, worked for any of the defendants at Cara Mia, Cara Mia 2, Taqueria Mez-A, Luna Piena, El Gallo de Oro (formerly known as Gallo Nero 2), Limon Jungle, La Carbonara, Intermezzo, Maria Pia, Gallo Nero, Serenata, and Lime Jungle Empanadas.

64.    The NYS Law Opt-Out Class is comprised of all non-exempt employees who, at any time since August 15, 2011, worked for any of the defendants at Cara Mia, Cara Mia 2, Taqueria Mez-A, Luna Piena, El Gallo de Oro (formerly known as Gallo Nero 2), Limon Jungle, La Carbonara, Intermezzo, Maria Pia, Gallo Nero, Serenata, and Lime Jungle Empanadas.

65.    The claims of the NYS Law Opt-Out Class are properly brought as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for the following reasons:

      a.    Numerosity:  The potential members of the NYS Law Opt-Out Class are so numerous that joinder of all members of the class is impracticable.

      b.    Commonality:  There are questions of law and fact common to plaintiffs and the class that predominate over any questions affecting only individual members of the class.  These common questions of law and fact include:

i.    whether Mr. Kukaj and the other defendants engaged in a policy and practice of failing to pay the minimum wage required by federal and state laws;

ii.    whether Mr. Kukaj and the other defendants engaged in a policy and practice of failing to pay time and a half at the proper minimum wage rate for all hours worked in excess of 40 during a workweek;

iii.    whether Mr. Kukaj and the other defendants engaged in a policy and practice of failing to pay class members for a spread of hours on days when they worked more than 10 hours;

iv.    whether Mr. Kukaj and the other defendants engaged in a policy and practice of failing to pay compensation for all hours worked;

v.    whether Mr. Kukaj and the other defendants engaged in a policy and practice of failing to provide class members with notice of their regular hourly pay rate, overtime hourly pay rate, amount of any tip credit to be deducted from the basic minimum hourly pay rate, the regular pay day, or that extra pay is required if tips are insufficient to bring the employee up to the basic hourly pay rate;

vi.    whether Mr. Kukaj and the other defendants engaged in a policy and practice of limiting the number of work hours that appeared on employee time records;

vii.    whether Mr. Kukaj and the other defendants operated their businesses as a single enterprise;

viii.    whether Mr. Kukaj and the other defendants are joint employers;

     ix.    whether Mr. Kukaj and the other defendants acted intentionally;

     x.    whether Mr. Kukaj and the other defendants are liable to the class;

     xi.    whether the class can be made whole by the payment of damages; and

     xii.    whether Mr. Kukaj is personally liable for the damages sustained by members of the class.

c.   Typicality:  Plaintiffs' claims are typical of the claims of the class.  Plaintiffs and all members of the class sustained injuries and damages arising out of and proximately caused by defendants' policies and practices of:  not providing written notice of employees' regular hourly pay rates, overtime hourly pay rates, amounts of any tip credits to be deducted from the basic minimum hourly pay rates, the regular pay day, or that extra pay is required if tips are insufficient to bring the employee up to the basic hourly pay rate; not paying the proper minimum wage; not paying overtime at time and a half at the proper minimum wage rate for all hours worked in excess of 40 per week; and not paying for all hours worked.

d.   Adequacy of Representation:  Plaintiffs will fairly and adequately represent the interest of class members.  Plaintiffs' counsel is competent and experienced in litigating complex employment class actions.

e.   Superiority:  A class action is superior to other available means for fair and efficient adjudication of this controversy.  Each class member has been damaged and is entitled to recovery because of defendants' illegal policies and practices. Individual joinder of all class members is not practicable.  Each member of the class earned relatively low wages, thereby rendering it prohibitively expensive

and impractical for class members to sue individually.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

**FIRST CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR VIOLATIONS**
**OF THE FAIR LABOR STANDARDS ACT (FLSA)**

66.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 65 above as if fully restated herein.

67.     The defendants have regulated the employment of plaintiffs and all other persons employed by them, acted directly and indirectly in their own interest in relation to the employees, and are thus employers of their employees within the meaning of section 3(d) of the Fair Labor Standards Act ("FLSA").

68.     Mr. Kukaj at all relevant times was in active control and management of the corporate defendants, regulated the employment of plaintiffs and all other persons employed by the corporate defendants, acted directly and indirectly in the interests of himself and the corporate defendants in relation to the employees, and thus is an employer of the defendants' employees within the meaning of section 3(d) of the FLSA.

69.     The business activities of the defendants, as described in this complaint, were related and performed through uniform operation or common control for a common business purpose and constitute an enterprise within the meaning of section 3(r) of the FLSA.

70.     Defendants have employed employees at their places of business in activities of an enterprise engaged in commerce.  The enterprise has had an annual gross volume of sales made or business done in an amount not less than $500,000.00.  Therefore plaintiffs and the

other employees were at all relevant times employed in an enterprise engaged in commerce within the meaning of section 3(s)(1)(A) of the FLSA.

71.     Defendants willfully and repeatedly violated the provisions of sections 6 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206 and 215, by employing plaintiffs and class members in an enterprise engaged in commerce without paying them the proper minimum wage for all hours worked.

72.     Defendants willfully and repeatedly violated the provisions of sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206 and 215, by employing plaintiffs and class members in an enterprise engaged in commerce, for workweeks longer than those prescribed in section 7 of the FLSA, and without compensating them for their employment in excess of the prescribed hours at rates not less than one and one-half times the regular rates at which they were employed.

73.     Defendants are liable for unpaid minimum wage and overtime compensation together with an equal amount in liquidated damages or, in the event liquidated damages are not awarded, unpaid minimum wage and overtime compensation together with prejudgment interest on said unpaid minimum wage and overtime compensation.

**SECOND CLAIM FOR RELIEF
AGAINST ALL DEFENDANTS FOR VIOLATIONS
OF THE NEW YORK LABOR LAW**

74.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 73 above as if fully restated herein.

75.     Defendants' failure to pay plaintiffs and other class members the proper minimum wage for all hours worked violated New York Labor Law §§ 650, *et seq.*, and is actionable under New York Labor Law § 663(1).

76.     Defendants' failure to pay plaintiffs and other class members the proper overtime pay violated New York Labor Law § 650, *et seq.* and 12 N.Y.C.R.R. § 142-2.2.

77.     Defendants' failure to pay plaintiffs and other class members the proper spread of hours pay violated New York Labor Law § 650, *et seq.* and 12 N.Y.C.R.R. § 146-1.6.

78.     Defendants' failure to pay plaintiffs and other class members the proper minimum wage, overtime compensation, and spread of hours pay was intentional.

79.     Defendants are liable for unpaid minimum wages and overtime wages together with an equal amount in liquidated damages or, in the event liquidated damages are not awarded, unpaid minimum wage and overtime compensation together with prejudgment interest on said unpaid minimum wage and overtime compensation.

**THIRD CLAIM FOR RELIEF
AGAINST ALL DEFENDANTS FOR VIOLATIONS
OF THE NEW YORK LABOR LAW
AND WAGE THEFT PREVENTION ACT**

80.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 79 above as if fully restated herein.

81.     Defendant Kukaj and the other defendants did not provide plaintiffs and other members of the class, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing:  the regular and overtime rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

82. Defendant Kukaj and the other defendants did not obtain from plaintiffs and other members of the class signed and dated written acknowledgements, in English and in the primary language of the employee, of receipt of the notice required by Section 195(1) of the New York Labor Law and affirmation by the employee that the employee accurately identified his or her primary language to the employer, and that the notice provided by the employer to such employee was in the language so identified.

83. Defendant Kukaj and the other defendants did not furnish to plaintiffs and other class members a statement with every payment of wages, listing:  the dates of work covered by that payment of wages; the name of the employee; the name of employer; the address and phone number of the employer; the regular and overtime rate or rates of pay and basis thereof; the gross wages; the number of regular hours worked; the number of overtime hours worked; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

84. Defendant Kukaj and the corporate defendants violated the New York State Wage Theft Prevention Act by failing to provide plaintiffs and other class members with the notices required by Section 195(1) of the New York Labor Law.

85. Defendant Kukaj and the corporate defendants violated the New York State Wage Theft Prevention Act by failing to provide plaintiffs and other class members with the wage statements required by Section 195(3) of the New York Labor Law.

86. Plaintiffs and other members of the class are each entitled to recover from defendants statutory damages of $50.00 per day for each day that defendants violated the notice requirements of Section 195(1) of the New York Labor Law, up to a maximum of $5,000.00 for each plaintiff and each member of the class.

87.    Plaintiffs and other members of the class are each entitled to recover from defendants statutory damages of $250.00 per day for each day that defendants violated the wage statements requirements of Section 195(3) of the New York Labor Law, up to a maximum of $5,000.00 for each plaintiff and each member of the class.

## FOURTH CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS FOR RETALIATION
## IN VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA)

88.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 87 above as if fully restated herein

89.    Plaintiff Melesio Leon complained to defendant Besim Kukaj that he was not being paid the wages required by federal and state laws.

90.    Defendant Kukaj, acting for himself and the corporate defendants he owns and controls, terminated Mr. Leon's employment by refusing to give him any more working hours after he complained about his wages.

91.    Defendant Kukaj, acting for himself and the corporate defendants he owns and controls, terminated Mr. Leon's employment because of Mr. Leon's complaint.

92.    Defendant Kukaj and the corporate defendants he owns and controls violated Section 215(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), which prohibits "any person" from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."

93.    Mr. Leon suffered damages proximately caused by the defendants' conduct.

## FIFTH CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS FOR RETALIATION IN
## VIOLATION OF THE NEW YORK LABOR LAW

94.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 93 above as if fully restated herein.

95.     Defendant Kukaj and the corporate defendants he owns and controls violated Section 215 of the New York Labor Law by retaliating against Mr. Leon.

96.     Mr. Leon suffered damages proximately caused by the defendants' conduct.

### Jury Demand

97.     Plaintiffs are entitled to and demand a jury trial.

### Prayer for Relief

WHEREFORE plaintiffs Melesio Leon, Luis A. Asitimbay, and Nestor Macancela, on behalf of themselves and the FLSA Opt-In Class and the NYS Law Opt-Out Class they seek to represent, request judgment against all defendants, jointly and severally, awarding them actual damages in amounts to be determined at trial, liquidated damages as authorized by 29 U.S.C. § 216(b) and New York Labor Law § 198, statutory damages as authorized by New York Labor Law § 198, pre- and post-judgment interest, reasonable attorneys' fees and the costs of this action as authorized by 29 U.S.C. § 216(b) and New York Labor Law § 198, and such other and further relief as this Court deems just and proper.

Dated: New York, New York
      August 15, 2017

THE HOWLEY LAW FIRM P.C.

By: _____
      John Howley [JH9764]
*Attorneys for Plaintiffs*
350 Fifth Avenue, 59th Floor
New York, New York 10118
(212) 601-2728

21